Our next case. Case number 24-1693 from the district of North Dakota, WBI Energy Transmission vs 189.9 rods in township 149 North, Edinburgh. Mr. Forster, you may proceed. May it please the court, Paul Forster on behalf of Plaintiff Appellant WBI Energy. Your Honors, WBI Energy in this case condemned natural gas pipeline easements under federal law, the Natural Gas Act. Ultimately the parties settled as to the just compensation owed for the easements themselves, leaving for the district court only the issue of the landowner's right, if any, to attorney's fees and expenses for the lawsuit. And in deciding that issue, the district court imported North Dakota law as a basis for awarding fees and expenses despite the lack of any fee shifting language in the Natural Gas Act and even though the Federal Uniform Relocation Act provides an express test for the recovery of fees and expenses. And it's undisputed that the landowners can't meet that test if it applies. Whose eminent domain power was WBI exercising? Was it the state of North Dakota's eminent domain power?  What was it? It was the federal eminent domain power. So it's under the Natural Gas Act, Delegees, natural gas pipeline companies are delegated the eminent domain power of the United States of America. You know, under the Fifth Amendment of the Constitution, it's a taking for which just compensation is required under the Fifth Amendment of the United States Constitution. So I'm just wondering the answer. If the United States is exercising eminent domain power, so you're basically almost subrogating to their power. It's an assignment or delegation. Can the United States get attorney fees or have to pay attorney fees to a private landowner when they go through eminent domain? Do you know if there's an answer to that? Yes. And it's actually, it's in that same Uniform Relocation Act provision that we're relying on here. Because the Uniform Relocation Act, as the title suggests, it actually there's a subchapter that sets a uniform policy for real property acquisitions that applies to all federal programs where eminent domain can be pursued. And so that litigation expenses provision that we're relying on, it applies to eminent domains brought both by the United States itself directly and to delegates such as WBI Energy in a federal program. And under that statute, attorney fees are not recoverable, am I right? Or under that They're recoverable only in very narrow circumstances. They're recoverable if the final judgment is that the federal agency, which here would be defined to include WBI Energy, if the judgment is that the federal agency cannot acquire the real property by condemnation, or if the proceeding is abandoned by the United States. So the second prong would only be applicable to I'm just, I'm trying to figure out how the district court reached this conclusion that state law applies. Because I'm not sure there's a gap. And I know you're going to be making this argument. But I'm just trying to figure out if it's the United States' eminent domain power, and if none of those situations apply, I don't see why there's a gap. If the United States can't get it, then I don't understand. Or if the United States doesn't have to pay it, then I don't understand why anyone who has a delegation of power would have to pay it. And that's our point, Your Honor. And we argued that point to the district court. And I think if you read the district court's order, it really just doesn't grapple with that issue, doesn't address it. You know, the district court basically just says, well, the Natural Gas Act itself is silent, doesn't say one way or the other. It doesn't have a provision on fees or expenses. And so because of that, there's a gap. And I'm going to jump to the Kimball Foods gap-filling text, essentially. But here's the thing. I mean, the thing you have to grapple with is that there's at least, I think, three other circuits, maybe four, that have done the exact same thing that the district court did here. I can't figure out why, to be honest with you. But you've got to be able to tell me why those cases are wrong or why this case is distinguishable from those. Absolutely. And first off, Your Honor, I'd say it's really only one circuit, the 11th Circuit, those sable trail cases. Those are the only ones that directly address attorney's fees and expenses. And so the particular issues, there's some issues that are unique to attorney's fees and expenses. There's the American rule that we've argued. There's the Relocation Act provision that we just discussed. Those aren't at play in any of the other circuit court decisions that you're talking about. And the 11th Circuit decision, I'd respectfully submit that that sable trail decision, it's not persuasive because it didn't address either of those arguments. It didn't address the American rule as a rule of statutory construction when deciding whether fee shifting is allowed under a federal statute. And it didn't address the Relocation Act. Instead, the first sentence of that case is that, paraphrasing, this case is all about our prior precedent rule and it just kind of blindly applies the Georgia Power case to the circumstance. Well, Georgia Power was about a real property valuation issue. And these other circuit cases are dealing with issues of what I would call just compensation, so properly so construed. Issues of property valuation and those types of things. In both sable cases, there were two judges, different judges actually, Jordan and Britt Grant who both dissented pretty forcefully saying that if it wasn't for the prior precedent rule, we probably should have ended up in a different place or we shouldn't have extended the rule as far as a debt. Right, exactly. And so I think there's the issue that I think the majority decision missed, the key issues unique to attorney's fees and expenses. But then those concurrences in both of the sable trail cases point out, even if you were going to somehow just lump this into compensation and say, oh, attorney's fees and expenses are just a matter of just compensation, Georgia Power and the cases that come out of that where they're applying state law to issues of just compensation in a federal condemnation, I think they really fail. They attempt to distinguish the Supreme Court precedent that would apply federal common law to those situations. And the way they do so is just not persuasive because... Is it, just for one quick, is it federal common law or is it just constitutional law? And that's a good point, Your Honor. We're probably mischaracterizing it a bit by calling it federal common law because it's not just judge-made rules. It's really interpretation of the meaning of just compensation under the Fifth Amendment of the United States. And that construction, interpreting what just compensation means under the Fifth Amendment, that's not dependent on the unique interest of the federal government or whether it's a federal program that's serving core national interests. It's an exercise in interpreting what just compensation means under the Fifth Amendment. And the Supreme Court cases, that BODCAW line of cases that I cited in the brief, they've directly held that indirect expenses such as attorney's fees, such as appraisal expenses, are not embraced within just compensation under the Fifth Amendment. And so that's a matter of definition of just compensation. Right. And admittedly, those cases dealt with just when it was just the United States. So we don't have this sort of what happens once under the Natural Gas Act, private parties can be delegated. But that's a definition under federal law. What about, what's your view of North Dakota's definition of just compensation? They have sort of a statutory structure. Is it, in your view, is under North Dakota law, are attorney's fees part of just compensation or is it something separate? And Your Honor, I addressed that in the reply brief. I do think that they're separate. Now, no doubt North Dakota law, the eminent domain statute, allows the district court discretion to award attorney's fees and expenses. I'm not disputing that. But it's, if you look at the statutory structure, even under North Dakota law, compensation and fee shifting are separate things. In fact, the statute, and I believe in the North Dakota Constitution, says that compensation has to be determined by a jury, whereas the statute delegates to the court the issues of fees and expenses. So if fees are all just a matter of just compensation under North Dakota law, then the statutory structure makes no sense. Because I'm trying to also figure out, you've brought the question to the district court in sort of an unusual package, right? Because you have settled for an undisclosed amount on just compensation. And so I think that matters. If just compensation in North Dakota law includes attorney's fees, maybe this has already been settled. Yeah. And what I would say there, Your Honor, is that if you look at the stipulation, I believe it's in the judgment, it says that we've settled on just compensation for the easements and that the issue of attorney's fees is to be decided as though the parties had proceeded. But I see what you're saying. I'm not going to walk back from my stipulation. Right, right. I'm not sure that if it is a part of just compensation, just like just the value of this little section of the property, I don't know, just making something up. I'm not sure you can carve that out and say, we've settled on just compensation except this, you know? So just trying to get a procedural sort of positioning here because we're kind of at the end of the line, attorney's fees, and now we have to go back and say, well, the parties didn't stipulate to state or federal law in their negotiations for the settlement, right? So we're kind of going back in time and acting as if from the point you all were negotiating just compensation, either federal or state law.  Because those, I'm sorry to interrupt, but there's even different ways that you can assess the value, right, under state versus federal. So I don't, that's not part of the record how the parties contemplated that, but it's sort of an unusual position for us to be in at this point. And I understand what you're saying, Your Honor. I mean, yeah, and certainly the compensation for easements was confidentially negotiated. There's no stipulation as to applying state or federal law. I mean, that was our dispute all along is whether or not you can recover attorney's fees that led to structuring it this way. What I can say, though, is I think to kind of short circuit whether or not fees are part of compensation under North Dakota law, I really don't think that's relevant because you only get there if you have this gap and the landowners are trying to bootstrap it in, put the cart before the horse, so to speak, by saying that, well, we should look at the two, we should look at fees as part of just compensation. And, you know, because under North Dakota law, they are. Well, even assuming that was the case, it's a question-begging argument because they're relying on North Dakota law to prove that the court should look to North Dakota law. I think you have to first back up, apply the American Rule, apply the Relocation Act. And if there's not a gap, you never get to thinking about North Dakota law. Let me ask you to follow up on one of Judge Strauss' questions about the other circuits that have addressed this. And I understand your answer sort of distinguishing in some part, but what about the difference between the United States acting with its eminent domain power and the delegation to a private party to essentially do the same thing, but there would be different concerns and interests associated with whether or not a private party would have to pay attorneys' fees? Because I think everybody sort of understands that this delegation was set up because the states weren't allowing, right, the private parties to get the land that they needed. So had the state allowed your client to go through, the state law would apply, right, if it was state-eminent domain. So why doesn't that factor in that this is sort of a way to get around the block that the states were putting up to allow their own state law to apply? I'd go back to where we started the discussion, Your Honor. It's that at its core, this is the issue of just compensation is interpreting, you know, interpreting a provision of the federal constitution, and the Supreme Court cases that have interpreted that, BODCA and so forth, they haven't relied on the nature of the federal interests as sort of a basis for their decision. But they didn't need to at that point. I guess I'm trying to figure out if there's anything about this delegation through a federal statute for these very purposes, if that's doing anything. I understand your position of, I understand those Supreme Court cases don't address this, but we've got kind of a new factual and statutory setup here. And maybe there's not an answer, but that's what I'm just trying to get at. Sure. I'd point you to the concurrence in one of those stable trail cases that just when you have this delegation, it's the delegates stepping into the shoes of the federal government. End of discussion. Right. And I'll reserve the remaining of my time. Can I just add one point to follow up on Judge Kelly? The stipulation, you said you were fighting the whole time about federal versus State law. Does the stipulation take a position on that or does it leave it open? No, it leaves it open. So ultimately, we still have to like figure that out ourselves for purposes of this. I just wanted, because it sounded like one of your answers, it sounded like maybe State law, that it was settled under State law. No. No, Your Honor. Okay. Thank you. All right. Counsel, you may proceed when you're ready. Thank you, Your Honor. May it please the Court. From farming to original homesteads, it is in the blood of North Dakota landowners to be protective of their real estate. From family ties to the need for farmers to grow crops, property ownership is near and dear to those who maintain it. These are strong words from our district court in North Dakota. In North Dakota, we protect our farmers and ranchers. We have a vibrant energy industry. Our government has found a way to balance those things. And in our federalist system, we give the States the power to balance those very difficult things like farmers and oil companies. This was a federal action. I mean, I'm having a problem with that because this was a delegation of United States eminent domain authority to a private entity. But the cause of action itself was federal too. It was both constitutional and federal. So I just don't understand where North Dakota law comes in when this is a purely federal issue. And Judge Strauss, what I would say to that is that Kimball Foods is also federal law. And Kimball Foods is United States Supreme Court precedent. And Kimball Foods directs you to look at the statute. And if that has a gap, if the answer is not there, you look at Kimball Foods. And through Kimball Foods, you decide whether you should be looking at it. That assumes a gap though. And if you follow the Supreme Court precedent, if this, I mean, I think we all agree, if the United States was exercising the eminent domain, no attorney fees. Do you agree with that? Yes. Yeah. And so my problem is, is United States says, hey, here you go WBI. We're not going to take eminent domain, but you go and exercise our power. You exercise the full power of the United States government. And so I don't understand how, if that's their power they're exercising, how the same law doesn't apply. And there is no provision for attorney fees. And federal law and the Constitution say just compensation doesn't include all of these extra fees. Now, I agree with you. It'd be really nice if it did and if federal law followed North Dakota law. But I just don't get the train of reasoning as to why there's a gap. I don't agree, Your Honor, that the delegate, I mean, first off, I don't agree that delegating constitutional eminent domain power is constitutional in and of itself. I recognize the court's side of that question.  I may not disagree with you on that. Putting that aside, that is a big deal. So even putting aside my argument that it's unconstitutional to delegate the eminent domain power, it's a big deal for the federal government to take the federal power of eminent domain and delegate that. And that is not a simple question of wholesale transport of the Fifth Amendment. Nothing in the Natural Gas Act talks about the Fifth Amendment. It doesn't even say they have to pay just compensation. It doesn't even say they have to pay compensation. The Natural Gas Act says just go take their land. I don't disagree, but there's precedent that suggests it's a delegation. I mean, I think the Supreme Court, not necessarily the Natural Gas Act, but similar statutes, that it's a delegation of the federal government's power of eminent domain. And there certainly are a ton of circuit court decisions saying that. But I don't believe there is anything about the federal power of eminent domain that dictates determination of how we decide what just compensation is in these cases. That is federal case law interpreting the Fifth Amendment in the context of takings by the United States. Well, I'm going to correct you on that. So let's take it away from attorney fees. Let's suppose that we had a statute delegating. And it said there's no measure of just compensation. And we're in North Dakota, and the measure of just compensation is treble damages, three times the property value. Do you think then under the Natural Gas Act, a federal statute exercising the power of eminent domain by the United States, that they could get three times the value of the  Yes. And I think those statutes exist in the United States and certain states. I don't know that I believe. I just don't think that's right. Because you're saying now that a private company would have to pay three times what the United States pays exercising the power of eminent domain of the United States. Yes, Your Honor, I am. And that is absolutely the case. Because there are cases from the United States Supreme Court that say that even when we talk about just compensation, whether we're talking state context, federal context, these cases say that even market value isn't always the determinant of just compensation. When we're talking about wartime cases where you have people gouging and saying, well, hey, this is market price, it is. That is actually the market in wartime. And they don't allow them to charge those prices in eminent domain. And so this concept of just compensation, and as it's been interpreted under the Fifth Amendment, is not some sort of, you know, brick wall that can never be taken down. That is a guide. Just compensation are words. And the courts have interpreted it, but there is not some sort of fixed federal and fixed state interpretation. Could they do it with the United States? Could they say three times the value of the property? North Dakota law says that. Would we apply North Dakota law or U.S. federal law? Would we say it's market value, which is what federal law is, or is it three times the value what North Dakota or somebody else may say? It depends on whether the U.S. Supreme Court reverses BODCA. But BODCA only applies to the United States. So I would agree with that, but not because the Natural Gas Act dictates that result, but because BODCA dictates that result, but only with respect to the United States. So it really comes down to what the delegation is. Is it a full delegation of the United States power, or is it a partial delegation? In other words, you have the ability to do eminent domain, but it's a partial delegation in the sense that you don't step into the shoes of the United States. And there are ways that Congress can take a more direct approach, like within the Natural Gas Act, where they say the full compensation allowed. And there are different places. And so Congress can do that. What they did here, and I think it's important to go to the language, and when you look at 717 FH, because it doesn't, as I said, even require compensation to the landowner. That's it. There's nothing there. But what does it include? Direct references to bringing these actions in state courts, a directive to as closely as you can follow state practice and procedure. That's what the federal Congress wanted. Is there a negative? I thought about that, but is there a negative implication? Why the act doesn't actually say, it specifies procedure and evidence, but it doesn't specify state substantive law? You could read it that way if you wanted. I'll agree to that. But I don't think it does state that, because I think there's history here, and I think what they were really saying is practice and procedure if you're in the state courts. And if you're going to do that, let's have our federal courts follow that, too. That's my take, but I understand your point, and you can make either point. But they also literally dictate cases under $3,000 have to be in state courts. And my point here is simply that this was not a show of disrespect for the principles of federalism. This recognized that states have a role to play here. And what I want to talk about in North Dakota is that we have unique laws. That's where I started. And it is important, and I disagree with what Mr. Forster is saying, for example, about the URA. So I'll bring that up briefly. But those two provisions in the URA, we have those. Those exact same, well, not exact same, but those same principles and those two provisions are in North Dakota's eminent domain chapter in a different section than our provision that gives us the attorney's fees, because that's a different matter. That is not the substantive right attached to just compensation that we have. That's a different statute, and that's what we're moving under. And we have cited precedent from the North Dakota Supreme Court that says you have to recover fees under North Dakota law in order to obtain just compensation. Now two of the questions asked earlier, it's slightly different. Can you say that again? So you just said that the statutory scheme separates out the attorney's fees from the just compensation portion, but that the North Dakota Supreme Court has said that's not accurate, that the attorney's fees are part of just compensation? That is correct, Your Honor. And the reason I say it's unique in North Dakota is if you look at the Sable Trail cases, that's a simpler version, I'll call it, where their constitution in Florida uses the phrase full compensation. And the way they interpret that is to include attorney's fees, meaning the jury is literally saying here's the compensation, here's the fees. What the North Dakota courts have said is the same principle but a slightly different procedure, where what they've said is that if you don't recover your fees, you're not getting just compensation. Because if you get $100,000 in just compensation and you spend $200,000 to get it, you didn't get just compensation, so you have to get your fees. That's how North Dakota law sees it. And so, it's a part of just compensation in that if you don't get your fees, you're losing your just compensation. But, so, I guess back to my question about the settlement, then, didn't, as I looked at the settlement, don't the parties use just compensation? We agree that the just compensation for this taking is X, well, you don't say how much it is, but we've agreed on what it is? The parties have agreed that there is just compensation, but what I'm saying is that this is not. So, our Constitution, after it says no taking without just compensation, also says for rights of way that you get full compensation. Florida courts interpreted that full compensation terminology to include attorney's fees with just compensation. I'm not saying that. That's not what I'm saying North Dakota law says. North Dakota law says attorney's fees and reimbursement of fees is mandatory because other, if you don't do that, you diminish the just compensation and that's unconstitutional. Backwards way of saying that it is still part of just compensation. But to their credit, they get around the concern about whether it is truly a determination for the jury or the court. And so, I would say that our process is superior to Florida's, but it is also unique in that it very much ties the attorney's fees up with just compensation. And the specific statute that does that is a different statute than the two statutes Mr. Forster refers to that appear both in the URA and in North Dakota's same eminent domain chapter. Can I, before you move on to that, can I ask a question? I understood in North Dakota law, though, the court may give attorney's fees. It is true, and if you look through the case law, like the Cass County Tom case, some of those cases, what they say is there are cases where a landowner asked for two or three times the amount and they got less than the actual offer on the table from the condemnor and the courts have said they still need to receive their fees and reimbursement even if they got less because, as I said, otherwise their just compensation is being diminished by the amount of their fees and expenses. And so, although it is a may, it is discretionary. I would challenge anyone to find cases where the Supreme Court of North Dakota or our courts are denying these fees. It's generally in a situation where maybe you have a landowner that just doesn't want a project on their property and doesn't really care what the result is. But I'm not aware of decisions where the North Dakota Supreme Court has ruled that, in general, this is just discretionary and we don't give fees. Generally speaking, the view in North Dakota, and I'm saying this not as me, I'm saying this as read the case law, the view is generally that fees are always recovered for these policy reasons that have been expressed by the North Dakota Supreme Court in its case law. On the stipulation, I heard you referring to it, do you think it really goes in either direction here? Because I could come up with one that says, well, just compensation, we've agreed to the measure and that's it for you. You don't get attorney's fees. I could also see it as just compensation and we agree that attorney fees are possible. I don't know that it goes in either direction. It's very strange to hear, I agree with Judge Kelly, it's very strange to be deciding this after you've already agreed on the underlying compensation. It's a strange procedural posture. In your honor, I'll be candid. I think Mr. Forster and I will agree on this, that we put a great deal of effort into drafting that stipulation so that no one would say that either of us were attempting to gain anything thereby. And so our stipulation was literally both of us understanding the issues in this case very well and understanding that our goal was to not take up more of the court's time arguing over something we thought we might agree on and just preserve the issue that we disagreed on for challenge down the road. And so that is truly what the stipulation was intended to do.  That's helpful. Counsel, what, maybe you've covered this and I just missed it, but what about the argument that Congress has really dictated a policy of national uniformity in condemnation proceedings? And one evidence of that is the Relocation Act and the provisions about attorney's fees. It sounds to me like the argument you're making here, the position that you've taken here really goes, would really kind of torpedo any interest in national uniformity in these proceedings. Thank you, Judge Shepard. And I would, let's see, I don't think that Congress has said with respect to Natural Gas Act that they need uniformity in determinations of the definition of just compensation. They have said they want uniformity in certain things, but the URA, and this is a point I wanted to make because even this court has said it, that's a policy directed at agency heads. It is specifically my clients, no enforceable right. There are no enforceable rights in the URA for private landowners. That's not filling any gaps. And there may be a policy for the federal government, but what that policy is is to protect displaced persons. That's what the URA does. And so, my primary point, though, is that that policy is not inconsistent with what we're arguing. Because as I said, those provisions in the URA are consistent with North Dakota law. We literally have those provisions, and we also have the provision that requires the fees to be paid so that just compensation is not diminished. And under federal law, you still have to look at Kimball Foods first before you start looking at the others. And that's federal law, too, the United States Supreme Court precedent. Thank you, Your Honors. All right, counsel, you fielded quite a few questions, so set the clock at two minutes for rebuttal. Thank you, Your Honor. Just a few brief points on rebuttal. I'll start with kind of where the discussion just ended and your question, Judge Shepard, about the uniform policy under the Relocation Act. Actually, the policy provision of the subchapter on uniform real property acquisition policy states expressly one of the purposes of the subchapter is to, quote, assure consistent treatment for owners in the many federal programs. That's 42 United States Code 4651. And so there is an express policy that owners are going to be treated consistently across these federal programs, which includes both United States condemnations directly and federal condemnations by a delegee, such as WBI. What about the previous expectation, though, that these proceedings would have been undergone through state eminent domain? And that really, unless you disagree with sort of the cases that describe the reason for this provision to give a client like yours the eminent domain power, I mean, if it weren't for that, they'd be doing this through state eminent domain, which then North Dakota or whichever state it was in, those laws would apply. What I'd say to that, Your Honor, is that when Congress stepped in and provided the federal eminent domain power, that weighs in favor of Congress indicating that it intended a uniform program so that delegees under this federal program, regardless of which state they're in, could exercise the federal domain power in the same way. So just supersedes what was going on before? Right. And, look, if WBI had brought a state condemnation under state law, there's no doubt we'd be proceeding under state law, but that's not the state of play. It's a federal question action. You know, one thing I just want to bring up real quick is this is, you know, your position yields a really terrible result because people end up losing their land and they may have to fight it and get attorney fees and, you know, that could cost several hundred thousand dollars and it diminishes just compensation. And so, I mean, the result is terrible. We don't even have a governmental entity who's doing it. So I just want to give you a chance to sort of, maybe the result doesn't matter, but I just want to give you a chance to respond to that. Sure, Your Honor. I think, first of all, it's clear from the structure and the federal case law that that's a policy decision for Congress to make. I think there's, look, there's competing policy concerns on both sides. And I totally appreciate your identification of that as a policy concern. It is a concern. The countervailing argument, you know, in terms of policy, though, is that if condemnation costs are increased and if owners are incentivized to litigate, that ultimately that flows through to the public and that the public bears those increased costs. And so there is an argument, you know, from a policy consideration on the other side, which is that if both sides are going to bear their own costs, there's a greater incentive to settle and keep those costs down and keep the public from bearing increased costs of the federal program. Thank you. Thank you, counsel, for your arguments. They've been very helpful. The case is submitted, and the decision will be issued in due course. May I stand aside?